## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## BID PROTEST

| |
| --- |
| NATIONAL AIR CARGO GROUP, INC. |
| |
| Plaintiff, |
| |
| v. |
| |
| THE UNITED STATES |
| |
| Defendant, |
| |
| and |
| |
| UNITED AIRLINES, INC. |
| |
| Defendant-Intervenor |

CFC No. 16-362C
(Judge Lettow)

### UNITED AIRLINES, INC.'S SUPPORT OF MOTION TO DISMISS AND RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION

United Airlines, Inc. ("United"), by and through the undersigned counsel, supports the

Defendant's Motion to Dismiss and files this response to the Plaintiff's Motion for Preliminary

Injunction.  For the reasons set forth below, National Air Cargo Group, Inc. ("NAC") is not an

interested party to pursue this protest, and therefore the protest must be dismissed.  Even if this

Court finds NAC to be an interested party, it has failed to support its entitlement to the

extraordinary remedy of a preliminary injunction.

### SUPPORT FOR MOTION TO DISMISS

The facts of this case, for purpose of this motion to dismiss, are not in dispute.  The

United States Transportation Command ("TRANSCOM" or "agency") issued Solicitation No.

HTC711-15-R-R001 ("Solicitation") for multimodal transportation services.  The Solicitation

1

explained that the agency intended to award "approximately 4" IDIQ Contracts under the

Solicitation.  Compl. Ex. 1 at 87.  After evaluating proposals, the agency initially made five

contract awards, including one to NAC.  Compl. at ¶ 9.  NAC did not challenge that there were

five awards made.  Shortly thereafter, but within the 180 time period offerors were requested to

keep proposals open, the agency made an additional award to United.  *Id*. at ¶ 10.

NAC filed numerous rounds of protests before GAO and this Court, asserting that

TRANSCOM acted improperly by awarding a sixth contract to United, without ever challenging

the fifth award.  *Id*. at ¶¶39-50, ¶¶58-63.  It further alleged that the agency's evaluation of United

was improper because it believed United did not have applicable past performance experience.

Comp. at ¶¶ 51-57.  For the reasons explained below, this Court does not have jurisdiction to

hear these protests.

This Court's bid protest jurisdiction is contained in the Tucker Act.  28 U.S.C. § 1491.

Under that statute, this Court "shall have jurisdiction to render judgment on an action by an

interested party objecting to a solicitation by a Federal agency or for bids or proposals for a

proposed contract … or any alleged violation of statute or regulation in connection with a

procurement or proposed procurement."  28 U.S.C. § 1491(b).  While the statute does not define

"interested party," the Court has construed the term in accordance with the Competition in

Contracting Act ("CICA"), 31 U.S.C. § 3551-56, as "an actual or prospective bidder or offeror

whose direct economic interest would be affected by the award of the contract or by failure to

award the contract."  *See, e.g., American Fed'n of Gov't Emps. v. United States*, 258 F.3d. 1294,

1299 (Fed. Cir. 2001) (citing 31 U.S.C. § 3551).  The test to determine whether a protester is an

interested party has two prongs: 1) whether the protester is an actual or prospective bidder; and

2) whether the protester's direct economic interest would be affected by the award of the

contract. *See, e.g., Digitalis Educ. Solutions, Inc. v. United States*, 664 F.3d 1380, 1384 (Fed. Cir. 2012) (citing *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006)); *Bannum, Inc. v. United States*, 115 Fed. Cl. 148, 153, *aff'd* 779 F.3d 1376 (Fed. Cir. 2015) (citing *Digitalis, supra*). NAC fails to satisfy either prong of this test.

NAC is not an "actual or prospective bidder." When NAC received one of the multiple IDIQ contracts awarded by TRANSCOM, its status changed from an "actual or prospective bidder" to an awardee, with no standing to challenge the award to another entity under the Tucker Act. This Court has explicitly held "[o]nce a bidder has received a contract, it is no longer an actual or prospective bidder or offeror with regard to the particular procurement. Instead, the bidder has become an awardee, who is not an interested party for purposes of 28 U.S.C. § 1491(b)(1) and therefore lacks standing to bring a bid protest to protect its award." *Outdoor Venture Corp. v. U.S.*, 100 Fed. Cl. 146, 152 (2011). *See also Trailboss Enterprises, Inc. v. United States*, 111 Fed. Cl. 338, 340-41 (2013); *ABF Freight Sys., Inc. v. U.S.*, 55 Fed. Cl. 392, 397 (2003). Moreover, the Federal Circuit has made clear that standing, pursuant to 28 U.S.C. § 1491, was intended to be "limited to disappointed bidders." *American Fed'n of Gov't Employees, AFL-CIO v. U.S.*, 258 F.3d. 1294, 1302 (Fed. Cir. 2001). Here, there is no dispute that NAC received an award of one contract under the Solicitation. In accordance with the rulings of this Court and the Federal Circuit, NAC therefore was not an actual or prospective bidder, and does not have standing to pursue this protest.

NAC also fails to satisfy the second prong, requiring the protester have a direct economic interest that would be adversely affected by the award of an additional contract to United. NAC asserts that it has a direct economic interest because the award to United "reduces the total volume of work solicited by task order available for NAC." Compl. ¶ 32. However, this is

insufficient to demonstrate an economic interest.  First, the terms of the Solicitation guaranteed all awardees a minimum total of $2,500.  Compl. Ex. 1 at 4.  The Solicitation did not guarantee any awardee any other task order awards, or profits from those task orders.  Instead, the task orders would be awarded pursuant to the fair opportunity procedures set forth in the Solicitation. Solicitation Amendment 3 and Attachment 3.

Thus, an additional award to United did not take any opportunities away from NAC. NAC would receive the same guarantee that it had already received, and would still be able to compete for all task orders.  The only difference is that one additional vendor would compete for those task orders.  The Court has held that such competition creates only speculative economic interest, which does not convey standing to another IDIQ Contract holder.  *Automation Techs, Inc. v. U.S.,*73 Fed. CL. 617, 624 (2006).  In that case, with facts similar to those here,[1] the Court held:

> ATI's economic interest in the present case is too speculative.  In the particular ID/IQ contracts with both ATI and DTI, Customs is not legally obligated beyond the guaranteed minimum of $2500.00 in task orders.

*Id*.  The lack of economic interest caused the Court to find that the protester, an awardee, lacked standing.

Here, at best, NAC's economic interest here is speculative.  NAC speculates that it will now not receive as many task order awards solely because United received an additional award. This argument is speculative, and is based on assumptions that have not yet been supported by facts.  Therefore, NAC lacks standing.

Finally, NAC relies on the case, *WinStar Communications, Inc. v. U.S.*, 41 Fed. Cl. 748 for the proposition that NAC's direct economic interest will be harmed by the additional award to

---

[1] Defendant has explained the facts of this case in its response.  Docket No. 11 at 5-6.

United.  This case is inapposite.  In *Winstar*, the protester filed a <u>pre-award</u> protest, challenging

the agency's decision to <u>limit</u> the award of IDIQ contracts to just one awardee.  The Court held

that the protester had standing because, as a pre-award protester, Winstar was a "prospective

offeror" when it filed the protest, and that the limitation of the number of awards would impact

its chance of receiving a contract, and the profits from that contract.  *Id*. at 756-57.  Unlike

*Winstar*, here, NAC is a <u>post-award awardee</u>, attempting to decrease the number of awards,

rather than increase the number of awards.  It is unclear how this case, cited by protester,

supports its position, and it should therefore be afforded little weight.  Plaintiff has not cited any

applicable cases supporting its position that it has standing as an actual or prospective offeror, or

as one with a direct economic interest.[2]

　　　Because the plaintiff fails to satisfy either prong of the test for an "interested party,"

under 28 U.S.C. § 1491(b)(1), the Court does not have jurisdiction to hear this protest, and it

should be dismissed.

## RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION

　　　If the Court determines that plaintiff has standing, plaintiff has requested that the Court

grant the extraordinary remedy of a preliminary injunction.  The Court evaluates four factors

when considering a motion for a preliminary injunction: (i) the likelihood of success on the

merits; (ii) whether the plaintiff will suffer irreparable harm; (iii) balancing the hardships of the

plaintiff against the hardships to the Government; and (iv) whether the public interest favors an

injunction.  *Tex. Instruments Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1329 (Fed. Cir. 2000) (citing

*Chrysler Motors Corp. v. Auto Body Panels of Ohio Inc.*, 908 F.2d 951, 952 (Fed. Cir. 1990); *see*

---

[2]   Moreover, while not binding on this Court, the GAO has recently issued a decision explaining
that challenges such as these constitute premature challenges to future task order awards.  *Aegis
Def. Servs., LLC*, B-412755, Mar. 25, 2016, ___ CPD ¶ ___ at 6-7.

*also SDS Int'l, Inc. v. U.S.*, 55 Fed. Cl. 363, 365 (2003).  NAC has failed to demonstrate why these factors fall in its favor.

**I.      NAC Is Not Likely To Succeed On The Merits.**

NAC's complaint sets forth two general protest grounds.  First, it asserts that the agency acted improperly by awarding a contract to United after it had previously made five awards pursuant to the Solicitation.  Complaint at ¶¶ 39-50, ¶¶ 58-63.[3]  Second, it asserts that the agency's evaluation of United was improper because it contends United does not have the proper experience to perform.  Neither of these arguments have merit.

With regard to NAC's assertion that the agency acted improperly by awarding an additional contract to United, NAC ignores critical facts and includes no legal basis for its conclusion.  As noted above, the Solicitation mandated that offerors keep proposals open for 180 days.  Compl. Ex. 1 at 86.  Plaintiff does not point to any portion of the Solicitation, or any legal precedent that states that once the agency makes awards under a multiple award IDIQ contract, it is prohibited from making additional awards while the proposals remain open.

NAC cites only to the term in the Solicitation explaining that the government could reopen competition "if there is shortfall in meeting the requirements among the existing IDIQ contract holders or if it is in the best interest to add new contractors to the original pool of IDIQ contract holders."  Compl. ¶ 44 (citing Ex. 1 at 52).  As NAC explains it, the agency awarded an additional contract to United "after the competition for these contracts under the Solicitation had ended."  Compl. at ¶ 44.  However, NAC does not explain how it reached this conclusion.  NAC does not cite to any provision of law or the Solicitation that explains all awards on an IDIQ contract must be made simultaneously—or, more to the point, that a competition "ends" once

---

[3]   Plaintiff includes two counts related to the agency's addition of United as an awardee, first asserting that it was improper pursuant to the terms of the Contract and next alleging it was improper pursuant to the Administrative procedures act.

some IDIQ contract awards in a multiple IDIQ contract are made.  Here, the Solicitation required offerors to keep their proposals open for 180 days.

The award made to United, while not made simultaneously with the other five awards, was made within that 180 day window.  Thus, NAC's argument that the competition had "ended" is inconsistent with the terms of the Solicitation, and is unsupported.

This same rationale holds true for NAC's argument that the agency violated the APA by not re-opening the competition, despite the fact that the previous competition had not yet ended.

As to its second argument, plaintiff asserts that the agency unreasonably evaluated United's proposal as acceptable because United, allegedly, did not have applicable past performance experience.  This argument too, will not likely succeed on the merits.  First, the argument is based wholly on speculation that NAC cannot support.  Second, NAC's ultimate conclusion (that United should have been deemed unacceptable) is baseless.

The Solicitation explained that offerors' past performance was to be evaluated on a scale ranging from Substantial Confidence to Unknown Confidence (Neutral).  Compl. Ex 1 at 89.  An offeror would receive a score of Neutral/Unknown confidence if "No recent/relevant performance record is available or the offeror's performance record is so sparse that no meaningful confidence assessment rating can be reasonably assigned."  *Id*.  In that circumstance, the Unknown confidence rating would be "treated neither favorably or unfavorably."  *Id*.  *See also* FAR § 15.305(a)(2).

According to NAC, United has "no experience with multi-modal transportation of cargo, as contemplated in and required by the Solicitation."  Compl. ¶ 52.  In that circumstance, the agency should have assigned a score of "neutral" rather than the result concocted by NAC of a rating that was not acceptable.  *Id*. at ¶ 57. Thus, even if NAC could somehow prove its

unfounded assertions (which it cannot), its conclusion that United should not have been rated acceptable is inconsistent with the terms of the Solicitation and the FAR.  Therefore, this protest count is not likely to succeed on the merits.

## II.     NAC Will Not Suffer Irreparable Harm.

NAC opines that it will suffer irreparable harm because it will have lost an opportunity to compete fairly and lose profits.  Docket No. 12-1 at 4-5.  However, as explained above, this is an IDIQ contract with a minimum guarantee of $2,500.  Compl. Ex. 1 at 3.  NAC has not—and cannot—assert that it will not get this guarantee.  It only asserts that it will lose profits on future, on yet to be issued, task orders.  Thus, its lost profits are speculative, at best.  And, its challenges are premature with regard to future task orders.  *See, Aegis*, *supra*.  Finally, as an awardee, NAC is entitled to compete for these task orders and may receive awards.  Thus, a preliminary injunction, in fact, would serve the opposite purpose—prohibiting NAC from competing for task orders.[4]

## III.     The Balance Of The Hardships Favors The Government And The Public.

Should the Court grant a preliminary injunction, the agency will be forced to continue to order services under unilaterally issued contract modification extensions to the contractors performing the previous work.  Docket No. 12-1 at 5-6.  These unilateral extensions are not in the best interest of the government or the public because they do not promote competition and allow individual, non-competitive procurements to continue.  Thus, the government's harm is significant, even though services can continue.

---

[4] As NAC explains in its memorandum, it is currently performing under the incumbent contract. Docket No. 12-1 at 5-6 ("…first, the predecessor MultiModal Cargo services contract is still in place and may be extended in thirty (30) day increments, which allows the defendant to continue to order services and have them performed uninterrupted.")  Thus, the effect of any injunction would be to prevent NAC, United and the other awardees from competing at all under the new IDIQ contract, while allowing NAC to continue to receive business under an older contract, which it evidently prefers.

However, NAC will suffer little or no harm if the Court refuses to issue a preliminary injunction.  As explained, NAC will receive the guaranteed $2,500 under this contract and will be permitted to compete for any task orders issued under this IDIQ contract while the protest is pending.  The harm identified by NAC is based on its apparently pessimistic view that United, rather than NAC, will win the task order awards.  Such speculation should not be cause to grant the extraordinary remedy of a preliminary injunction.

Moreover, while NAC correctly explains that the public interest is ensuring the integrity of the procurement process is preserved, NAC ignores that the integrity of this procurement process remains intact.  NAC's arguments are not likely to succeed on the merits, as explained above.  Therefore, the public interest warrants moving forward with this much-delayed procurement, and allowing entities to compete for task orders under the contract, rather than continuing the predecessor contract.

## **CONCLUSION**

For the reasons set forth above, intervenor respectfully requests that this Court dismiss the protest.  If it does not dismiss the protest, United respectfully requests that the motion for preliminary injunction be denied.

Respectfully submitted,

/s/ David S. Cohen

Cohen Mohr, LLP
1055 Thomas Jefferson St., N.W
Suite 504
Washington, D.C. 20007
(202) 342-2550 (telephone)
(202) 342-6147 (facsimile)
dcohen@cohenmohr.com

Attorney for Defendant-Intervenor
United Airlines, Inc.

Dated:  April 4, 2016

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of April, 2016, a copy of the foregoing was electronically filed. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ David S. Cohen