**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**(Bid Protest)**

| | | |
|---|---|---|
| **NATIONAL AIR CARGO, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | |
| | ) | |
| **THE UNITED STATES,** | ) | **No. 16-362C** |
| | ) | **(Judge Charles F. Lettow)** |
| **Defendant,** | ) | |
| v. | ) | |
| | ) | |
| **UNITED AIRLINES,** | ) | |
| | ) | |
| **Defendant-Intervenor.** | ) | |

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION WITH APPENDIX

Pursuant to Rule 65 of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully requests that the Court deny the motion for a preliminary injunction submitted by plaintiff, National Air Cargo, Inc. (NAC). *See* Plaintiff's Motion for a Preliminary Injunction and Request for a Temporary Restraining Order and supporting memorandum (both dated March 29, 2016).

## STATEMENT OF THE ISSUES

1.     Whether NAC should be granted a preliminary injunction.

2.     If this Court grants a preliminary injunction, what amount of security should NAC be required to pay.

## STATEMENT OF THE CASE

### I.     Nature Of The Case

NAC has received a contract award on the multiple award indefinite delivery, indefinite quantity (ID/IQ) contract at issue before this Court.  NAC alleges it has been damaged by the

award of an indefinite delivery, indefinite quantity (ID/IQ) contract to United Airlines, Inc. (United).  Compl. at ¶ 63.  NAC further alleges United's award was improper because the award was not contemplated in or authorized by the solicitation, United could not have received an acceptable past performance rating, and the award should not have been made to United without first re-opening the competition.  Compl. at 1.  NAC alleges it has been damaged due to the potential for increased competition that could occur at the task order level from an additional awardee under the ID/IQ, which may result in fewer task orders being awarded to NAC.  Compl. at ¶ 32-33.  NAC asks the Court to rescind United's contract award and enjoin any performance thereunder.  Compl. at 13.

## II.    <u>Statement Of Facts</u>[1]

On February 12, 2015, the United States Transportation Command (TRANSCOM or agency) issued Solicitation No. HTC711-15-R-R001 for international commercial transportation services to move Department of Defense and other Government-approved cargo.  Compl. at ¶ 5. The solicitation provided that the agency intended to award "approximately 4" ID/IQ contracts to provide the Government with flexibility of choice and service coverage.  Compl. Ex. 1-3 at 31. Each awardee was guaranteed a minimum of $2,500 in orders.  Compl. Ex. 1-1 at 5.

The solicitation required offerors to hold firm the prices in their offers for 180 calendar days from the date specified for receipt of offers.  Compl. Ex. 1-3 at 30.  Offers were due on March 16, 2015.  Compl. Ex. 1-1 at 2.  On June 11, 2015, the agency awarded five ID/IQ contracts (including one to NAC).  Compl. at ¶ 9.  On July 17, 2015, still within the 180 days

---

[1]  For purposes of this motion only, defendant accepts as true the factual allegations in the complaint, excluding paragraphs 10-13, 16-18, 25-29, 31-34, 38, 44-50, 55-57, and 60-63 which contain arguments.  Should the Court deny this motion, defendant reserves the right to contest each and every factual allegation in the complaint.

offerors were required to hold their prices firm, the agency awarded a sixth contract to United. Compl. at ¶ 10.

## ARGUMENT

NAC seeks to enjoin TRANSCOM from issuing task orders for Multimodal Cargo Transportation to any of the ID/IQ contracts awardees under Solicitation HTC711-15-R-R001 until the Court adjudicates NAC's protest.  Plaintiff's Memorandum (Pl. Mem.) at 1.  NAC's request is void of any evidence supporting its claims or otherwise demonstrating its entitlement to immediate injunctive relief.  NAC's unsupported allegations fail to demonstrate that the Government should be indefinitely enjoined from permitting performance under any of these contracts, only one of which is the subject of NAC's protest.  Accordingly, the Court should deny NAC's request.

## I.      Standard Of Review

To obtain a preliminary injunction, the protester bears the burden of establishing:  "(1) that the movant is likely to succeed on the merits; (2) that it will suffer irreparable harm if preliminary relief is not granted; (3) that the balance of the hardships tips in the movant's favor; and (4) that a preliminary injunction will not be contrary to the public interest."  *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993); *see also PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004).  "An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course."  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010) (citation omitted).  Indeed, because the grant of a preliminary injunction is "extraordinary relief that alters the status quo during the course of litigation," a movant must meet "exacting standards" in order to obtain it.  *Lermer Germany GmbH v. Lermer Corp.*, 94 F.3d 1575, 1577 (Fed. Cir. 1996).  The party seeking injunctive relief bears the extremely heavy burden of

demonstrating its entitlement to this extraordinary relief by clear and convincing evidence. *See*

*Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 266, 268 (1997) (citation omitted).

**II.**     **NAC Is Not Likely To Succeed On The Merits**

NAC is not likely to succeed on the merits because there is no evidence that the award to

United was prohibited by the terms of the Solicitation, or that NAC was in any way prejudiced

by that award.

**A.**     **The Standard To Succeed On The Merits Of A Bid Protest Is High**

A protestor must meet a high standard to succeed on the merits of its case and it is

unlikely to be able to do so.  "In a bid protest case, an agency's decision to award a contract must

be upheld unless it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law.'"  *PAI Corp. v. United States*, 614 F.3d 1347, 1351 (Fed. Cir. 2010)

(quoting *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2009)); *see*

*also* 28 U.S.C. § 1491(b)(4); 5 U.S.C. § 706(2)(A).  "Accordingly, procurement decisions are

subject to a 'highly deferential rational basis review.'"  *PAI Corp.*, 614 F.3d at 1351 (quoting

*CHE Consulting, Inc. v. United States*, 552 F.3d 1351, 1354 (Fed. Cir. 2008)).  "Applying this

highly deferential standard, the court must sustain an agency action unless the action does not

'evince[] rational reasoning and consideration of relevant factors.'"  *Id.* (quoting *Advanced Data*

*Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000)) (alterations in original).

The Court may only set aside the agency's procurement action if either "'(1) the

procurement official's decision lacked a rational basis; or (2) the procurement procedure

involved a violation of regulation or procedure.'"  *Axiom Res. Mgmt., Inc. v. United States*, 564

F.3d 1374, 1381 (Fed. Cir. 2009) (quoting *Impresa Construzioni Geom. Domenico Garufi v.*

*United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).  A court evaluating a challenge on the first

ground must determine "whether the contracting agency provided a coherent and reasonable

explanation of its exercise of discretion." *Id.* (quoting *Impresa*, 238 F.3d at 1333). "When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations." *Id.*

Even if a protester identifies a significant error in the procurement process, the protester cannot prevail unless the protester also establishes that it was substantially prejudiced by that error. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1354 (Fed. Cir. 2005) ("[T]he prejudice determination assesses whether an adjudged violation of law warrants setting aside a contract award."). To demonstrate prejudice, a protester must demonstrate that, but for the alleged error, it would have had a substantial chance of securing the contract. *Id.* at 1353. This is an insurmountable burden for a Protester who *did* receive an award.

Agency procurement decisions are entitled to a "presumption of regularity," *Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1085 (Fed. Cir. 2001), and contracting officers are "entitled to exercise discretion upon a broad range of issues confronting them in the procurement process." *Impresa*, 238 F.3d at 1332 (internal quotations and citation omitted). Therefore, the Court should take care to avoid substituting its own judgment for that of the agency. *See Redland Genstar, Inc. v. United States*, 39 Fed. Cl. 220, 231 (1997) ("[T]he court should not substitute its judgment for the agency's").

### B.    The GAO Has Already Determined That NAC Is Not An Interested Party

The GAO has already given careful consideration to NAC's arguments and has *twice* concluded that NAC's protest was meritless (first because NAC's allegations merely sought to limit competition, and second because NAC is not an interested party to protest the award to United). *See* GAO decisions at Appx1-8. This fact alone, while not dispositive, weighs heavily against the likelihood that NAC could demonstrate that it is likely to succeed on the merits of its protest. *See, e.g.*, *Cincon Sys., Inc. v. United States*, 37 Fed. Cl. 266, 268 (1997) (holding that

plaintiff demonstrated success "may be possible" but not "likely" and remarking "the court is mindful of the heavy burden placed on plaintiff, as well as the existence of a GAO decision unfavorable to plaintiff, to which the court should give due deference"). "Traditionally, decisions by the Comptroller General have been accorded a high degree of deference by the courts, particularly those decisions involving bid protests." *E.W. Bliss Co. v. United States*, 33 Fed. Cl. 123, 134-35 (1995), *aff'd*, 77 F.3d 445 (Fed. Cir. 1996). In particular, a "court's reluctance to interfere with the executive procurement process should be especially strong where . . . [GAO] has made a determination upholding the procurement officials on the merits." *Id.* at 134 (citation omitted).

Consistent with the GAO's findings, NAC does not possess standing in this Court either. For purposes of jurisdiction, pursuant to 28 U.S.C. § 1491(b), the term "interested party" is construed consistently with the relevant statute concerning disputes at the GAO and "is limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *Am. Fed'n Gov't Emps., AFL-CIO v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001). As demonstrated in Defendant's Motion to Dismiss Complaint, NAC is not a disappointed bidder, but a contract awardee. NAC's direct economic interest is likewise not affected by the award to United. Regardless of the number of awardees, NAC is guaranteed $2,500 in task orders, and no more. Because the solicitation provides that orders are to be competed among all contract awardees, NAC's economic interest is not affected by the number of awardees, but by the aggressiveness of its bids.

Accordingly, it is highly unlikely NAC will succeed on the merits. NAC has failed to meet the burden of demonstrating it is likely to succeed on the merits of its protest and this Court should therefore deny NAC's motion for a preliminary injunction.

**III.    NAC Has Not Established By Clear And Convincing Evidence That It Will Suffer Irreparable Harm if Injunctive Relief Is Not Granted**

NAC cannot demonstrate harm justifying a grant of preliminary injunction because it has failed even to articulate an immediate and irreparable harm that will flow to it if the United States is not enjoined.  A protestor cannot meet its burden "by reliance upon [the] pleadings alone, or by conclusory allegations and generalities." Bromley Contracting Co. v. United States, 15 Cl. Ct. 100, 105 (1988); see also Campbell v. United States, 2 Cl. Ct. 247, 249 (1983).  NAC offers only a bare allegation that it "will suffer immediate and irreparable injury by virtue of the denial of due process rights and the opportunity to fairly compete in the procurement process." Pl. Mem. at 5.  As support for this allegation, NAC includes an affidavit from its company president complaining of the potential for lost economic activity, profits, and corporate experience for any task orders awarded to United.  These are speculative claims; NAC does not offer the "hard facts" generally required by law because it cannot do so.

NAC's claims of irreparable harm fail for two reasons.  First, the potential for lost task orders in the future are speculative, and both this Court and GAO have previously rejected those arguments.  *See Automation Technologies, Inc. v. United States*, 73 Fed. Cl. 617, 624 (2006) (finding protestor's claimed economic interest on lost future task orders as too speculative where Government "is not legally obligated beyond the guaranteed minimum of $2500.00 in task orders"); *see also Recon Optical, Inc.; Lockheed-Martin Corp., Fairchild Sys.*, B-272239, 96-2 CPD ¶ 21 (Comp. Gen. July 17, 1996) (finding protestors' claims that obligated funds for other awardees in a multiple award contract was a direct economic interest was speculative and "not sufficiently direct to render the protesters interested parties").  As these claimed losses are entirely speculative, they fail to meet the threshold of clear and convincing evidence.

Second, the terms of NAC's ID/IQ contract guarantees it the right to compete for all task orders issued before and after this Court renders a decision, but only guarantees it a minimum of $2,500 in task orders.  NAC has failed to demonstrate any evidence that the addition of United to the award pool threatens its ability to receive the contractually guaranteed $2,500 in task orders. In actuality, NAC will not suffer any harm should the Court deny its request for a preliminary injunction because it will be able to compete for task orders as a contract awardee.  Indeed, there is arguably no situation where a protestor before this Court has less of an argument of irreparable harm than when that protestor is a multiple award ID/IQ awardee able to compete on future task orders, which is NAC's exact position before this Court.

NAC has utterly failed to meet the burden of demonstrating with clear and convincing evidence that it will suffer irreparable harm if injunctive relief is not granted, and this Court should therefore deny NAC's motion for a preliminary injunction.

**IV.     The Harms To The United States And United Outweigh Any Speculative Harm To NAC**

NAC alleges the Government will not be harmed by the issuance of a preliminary injunction because the Government can continue to order multimodal transportation services under the predecessor contracts.  The Government has the option to extend the predecessor contracts through July 2016, however it is more beneficial to the Government to issue orders under the new contracts.  There are more awardees under the new solicitation providing the Government the benefit of more robust competition, particularly in the area of airlift.  While NAC was the sole air carrier holding a contract under the predecessor solicitation, there are three under the new solicitation.  Increased competition almost invariably results in lower costs for the

Government, and preventing the Government from having United as an awardee would deprive the Government of a significant source of competition at the task order level.[2]

United and another awardee are not contract holders under the predecessor solicitation. NAC is free to compete for orders under either solicitation. The Government, however, is much more limited in the competition it can obtain on the predecessor solicitation and would be forced to pay higher rates,[3] so the balance of hardships clearly does not tip in the favor of NAC in this case. Indeed, the significant harms of less competition to the Government vastly outweigh any speculative harm alleged—yet undemonstrated—by NAC.

NAC has failed to meet the burden of demonstrating the speculative harm to itself outweighs the actual harms of lost competition on future task orders for the United States. This Court should therefore deny NAC's motion for a preliminary injunction.

## V.      An Injunction Would Be Contrary To The Public Interest

The public interest tips in favor of denying the injunction. The public has an interest in minimizing costs to the Government and thus any additional costs incurred by continuing with more expensive service occasioned by less competition would inherently be contrary to the public interest. NAC has utterly failed to show how the public interest is furthered by a preliminary injunction that would incur significant costs to the Government based on self-serving allegations devoid of any evidence of wrongdoing, as is the case here.

This Court has recognized the strong public interest in not interfering with the procurement process of Government agencies. *See LABAT-Anderson, Inc. v. United States*, 65

---

[2]  The award to United would allow the Government access to a worldwide corporation that possesses over 700 mainline aircraft and conducts over 5,000 flights every day to six continents. *See* http://ir.united.com/company-information/company-overview.

[3]  As the contracting officer notes in her declaration, the overall average rates are 11% lower on the new ID/IQ contract, resulting in a net savings of $584,529.00 per month which would be lost if this Court enjoins the Government. Appx9-11.

Fed. Cl. 570, 581 (2005) (finding that public interest is not served by interfering with the procurement process so long as the agency did not violate applicable laws and regulations); *JDL Constr., Inc., v. United States*, 14 Cl. Ct. 825, 829 (1988) (noting that judicial intervention through injunctive relief in the procurement process is a drastic and extraordinary remedy). While in some cases it might be necessary to temporarily enjoin the performance of a Government contract to prevent a serious violation of law, this is not such a case.

NAC has failed to meet the burden of demonstrating injunctive relief would not be contrary to public interest.  This Court should therefore deny NAC's motion for a preliminary injunction.

## VI.   If The Court Grants NAC's Request, NAC Must Be Required To Provide A Bond

Pursuant to RCFC 65(c), the Court may issue a preliminary injunction "*only if* the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained" (emphasis added). Accordingly, NAC is required to provide security in an amount that would pay the costs and damages sustained by both the United States and United should the Court ultimately rule on the merits in favor of the Government and conclude the injunction was improvidently granted.

The purpose of requiring a bond is to make parties who have been unjustly enjoined whole for damages caused by judicial interference, "if [that interference] is not ultimately upheld" because "[c]ourts that do not observe these precautions will sometimes leave wounds the Court of Claims will be in no position to heal."  *Hosp. Klean of Texas, Inc. v. United States*, 65 Fed. Cl. 618, 625 (2005) (citation omitted).  The amount of a bond is within the Court's sound discretion.  *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1385 (Fed. Cir. 2006).  However, this Court routinely relies on the Government's "estimates of the costs associated with issuing a [temporary restraining order]."  *Serco, Inc. v. United States*, 101 Fed. Cl. 717, 722 (2011)

(citation omitted) (bond for two-week restraining order set at $300,000); *see also Bona Fide Conglomerate, Inc. v. United States*, 96 Fed. Cl. 233, 243 (2010) (bond set at $50,000 based on the Government's estimated costs for period of temporary restraining order).  The contracting officer here has calculated the additional costs if enjoined in this case to be at least $1,169,058.00.

Accordingly, the Court should require NAC to provide security in the amount of at least $1,169,058.00 to cover the costs to the United States if the Court enjoins the United States.

## CONCLUSION

For the foregoing reasons, we respectfully request the Court deny NAC's motion for a preliminary injunction or, in the alternative, require NAC to provide appropriate security pursuant to RCFC 65(c).

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

Of Counsel:

s/ Douglas K. Mickle
KAREN L. TIBBALS                    DOUGLAS K. MICKLE
PETER B. RIES                       Assistant Director
Acquisition Attorneys
USTRANSCOM/TCJA                     s/ Aaron E. Woodward
Scott AFB, IL                       AARON E. WOODWARD
                                    Trial Attorney
LT COL AARON G. LAKE                Commercial Litigation Branch
Deputy Chief                        Civil Division
Commercial Litigation Field Support Center   Department of Justice
AFLOA/JAQC                          P.O. Box 480
Andrews AFB, MD                     Ben Franklin Station
                                    Washington, D.C. 20044
                                    Tel: (202) 616-0331
                                    Fax: (202) 514-8624

April 4, 2016                       Attorneys for Defendant

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that on this 4th day of April, 2016, a copy of the foregoing "Defendant's Response in Opposition to Plaintiff's Motion for a Preliminary Injunction with Appendix" was filed electronically.  I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

s/ Aaron E. Woodward

# GAO
**Accountability * Integrity * Reliability**

**Comptroller General
of the United States**

United States Government Accountability Office
Washington, DC 20548

# Decision

**Matter of:**   National Air Cargo Group, Inc.

**File:**   B-411830

**Date:**   September 24, 2015

## DECISION

National Air Cargo Group, Inc., of Orlando, Florida, protests the award of a contract to United Airlines, Inc., issued by the Department of Defense (DoD), United States Transportation Command (TRANSCOM) under request for proposals (RFP) No. HTC711-15-R-R001 for international commercial transportation services. The protester argues that the agency's decision to award a contract to United violates the terms of the RFP, and that the agency's evaluation of United's proposal was unreasonable.

We dismiss the protest because, as filed with our Office, it does not establish a basis for challenging the agency's action.

The agency issued the RFP on February 12, 2015, seeking proposals for a full range of international commercial transportation services to move cargo on behalf of DoD and the U.S. government. RFP, Performance Work Statement (PWS), at 2-17. The RFP anticipated the award of approximately four indefinite-delivery, indefinite-quantity (IDIQ) contracts based on a performance-price trade-off basis under the commercial item and negotiated contracting procedures of Federal Acquisition Regulation (FAR) Parts 12 and 15. RFP amend. 2 at 6. The RFQ provided that the IDIQ contracts would have a one-year base period with two one-year options, and explained that each IDIQ awardee would be guaranteed a minimum quantity of orders valued at no less than $2,500. Id. at 3-4, 87.

The agency received multiple proposals by the March 16, 2015 closing date, including National's and United's. Agency Dismissal Request at 2. TRANSCOM made five contract awards on June 11, with National being among those companies

selected. Id. at 3. The agency awarded a sixth IDIQ contract to United on July 17.[1]
Id.

National challenges the agency's decision to award a sixth IDIQ contract. The
protester argues that United's award is improper because the RFP terms
anticipated the award of approximately four contracts, and thus, the agency cannot
make a sixth award.[2] National also asserts that TRANSCOM failed to follow the
RFP's reopening procedures prior to awarding the contract to United. Finally, the
protester argues that the agency's evaluation of United's past performance was
unreasonable because based on "information and belief," National alleges that
United has no prior relevant experience with the transportation requirement being
acquired under the solicitation. Id. at 5.

With regard to National's challenge to the agency's decision to award a sixth
contract, we will not consider the merits of the protester's allegations, which, in
essence, seek to limit the agency's discretion to increase the pool of competition
among the IDIQ contract holders. Our role in resolving bid protests is to ensure that
the statutory requirements for full and open competition are met, and, as a result,
we generally will not review a protest that has the purpose or effect of reducing
competition to the benefit of the protester. See Kollmorgen Corp., B-221709.5,
June 24, 1986-1-CPD ¶ 580 at 3; Rexnord Corp., B-244573, Oct. 2, 1991, 91-2
CPD ¶ 284 at 2-3. Our Office does not consider such arguments as stating a valid
basis for protest. Morpho Detection, Inc., B-410876, Mar. 3, 2015, 2015 CPD ¶ 85
n.4 citing Phaostron Instrument & Electric Co., B-284456, Apr. 20, 2000, 2000 CPD
¶ 65 at 3-4 n.4 (allegation that protester was prejudiced because it did not know
awardee was included on QPL fails to state a basis for protest); see also, Rexnord
Corp., B-244573, Oct. 2, 1991, 91-2 CPD ¶ 284 at 2-3 (protest that awardee should
be removed from approved sources list dismissed because our Office will not review
a protest having the purpose of reducing competition to the benefit of the protester).

We also dismiss National's allegation that upon "information and belief" United lacks
any prior experience that is relevant to the requirements under the solicitation.
Protest at 5. This assertion is based entirely on speculation, and National has

---

[1] The solicitation required that all offerors hold their pricing firm for 180 days after
the due date for receipt of proposals; the agency's sixth award was within the
180-day period offerors were to hold firm their prices in accordance with FAR
52.212-1. RFP amend. 2 at 5.

[2] National did not submit a challenge to the fifth IDIQ contract award.

provided no evidence in support of its position.  As such, this aspect of the protest is dismissed.  4 C.F.R. §21.21.5(f).

The protest is dismissed.[3]

Susan A. Poling
General Counsel

---

[3] We also find no basis to consider the protester's assertion that the agency failed to follow the RFP's reopening requirements.  United's award was part of the initial competition; the RFP's reopening procedures do not apply.

B-411830

B- 411830.2 (Comp.Gen.), 2016 WL 1055743

COMPTROLLER GENERAL

Matter of: National Air Cargo Group, Inc.

DOCUMENT FOR PUBLIC RELEASE The decision issued on the date below was subject
to a GAO Protective Order. This redacted version has been approved for public release.

March 9, 2016

**\*1**  Milton C. Johns, Esq., Thomas M. Craig, Esq., Fluet Huber & Hoang, PLLC, for the protester.
David S. Cohen, Esq., Daniel Strouse, Esq., John J. O'Brien, Esq., Laurel A. Hockey, Esq., and Amy J. Spencer, Esq., Cohen
Mohr LLP, for United Airlines, Inc., the intervenor.
Lt. Col. Aaron G. Lake, Department of the Air Force, for the agency.

Young S. Lee, Esq., and Nora K. Adkins, Esq., Office of the General Counsel, GAO, participated in the preparation of the
decision.

**DIGEST**

Protest challenging agency's decision to award an additional contract under a solicitation contemplating multiple awards is
dismissed where the protester is an awardee and has not credibly alleged that it is an interested party.

DECISION

National Air Cargo Group, Inc., (National), of Orlando, Florida, protests the award of a contract to United Airlines, Inc.,
(United), issued by the Department of Defense (DoD), United States Transportation Command (TRANSCOM) under request
for proposals (RFP) No. HTC711–15–R–R001 for international commercial transportation services. The protester argues that
the agency's decision to award a contract to United violates the terms of the RFP and that the agency's evaluation of United's
past performance was unreasonable.

We dismiss the protest.

The agency issued the RFP on February 12, 2015, seeking proposals for a full range of international commercial transportation
services to move cargo on behalf of DoD and the U.S. government. RFP at 1; RFP, attach. 1, Performance Work Statement
(PWS), at 2. The RFP anticipated the award of approximately four indefinite-delivery, indefinite-quantity (IDIQ) contracts
based on a performance-price trade-off, under the commercial item and negotiated contracting procedures of Federal Acquisition
Regulation (FAR) Parts 12 and 15.[1] RFP amend. 2 at 6. The solicitation contemplated that the IDIQ contracts would have a
one-year base period with two one-year options, and provided that each contract awardee was guaranteed a minimum quantity
of orders valued at no less than $2,500. RFP at 3–4. The RFP also included procedures established by the agency to determine
how future task orders would be awarded. RFP at 87; RFP, attach. 3, Fair Opportunity Process, at 1–4.

In addition to the initial awards that were anticipated, the solicitation provided for the possibility that the agency could expand the
existing pool of IDIQ contract holders. RFP at 52. In this regard, the RFP stated that TRANSCOM could reopen the solicitation
if there was a shortfall in meeting the requirements among existing IDIQ contract holders, or if it was in the agency's best
interest to add new contractors to the original IDIQ contract pool. *Id.* Any new awardee would then be eligible to compete for
future task orders under the RFP's fair opportunity ordering procedures.[2] *Id.* Existing IDIQ contract awardees would not be
eligible for an additional contract. *Id.*

**\*2**  The agency received multiple proposals by the March 16 closing date, including those from National and United. Dismissal Request at 2. TRANSCOM made five contract awards on June 11, with National being among the awardees selected. *Id.* The agency awarded a sixth IDIQ contract to United on July 17.[3] *Id.* On July 27, National filed a protest challenging TRANSCOM's award to United, arguing that the terms of the RFP prevented the agency from making a sixth award and alleging that the agency's evaluation of United's proposal was unreasonable.[4]  Protest (**B–411830.1**) at 1–7. On September 24 our Office dismissed National's protest because it did not establish a valid basis for challenging the agency's action.[5] *National Air Cargo Group, Inc.,* B–411830, Sept. 24, 2015 (unpublished decision) at 1–3.

Subsequently National filed a protest at the U.S. Court of Federal Claims on October 13. Dismissal Request at 2. In response to that protest, TRANSCOM advised that it would take corrective action by re-evaluating the past performance of all offerors and by issuing a new award decision based on its re-evaluation. *Id.* at 3; Protest, Exhibit 5, Corrective Action Notice, at 1. National's protest was dismissed by the Court on November 30. Dismissal Request at 3. On January 21, 2016, TRANSCOM affirmed all six contract awards, including the awards made to National and United. *Id.* The instant protest was filed with our Office on January 27.

The substance of National's instant protest generally repeats the challenges it raised in its prior protest to our Office. The protester again argues that award of a sixth contract to United is improper because the RFP terms anticipated approximately four contracts. National also asserts that because United's initial contract was not awarded until July 17, 2015, which was after the initial five awards were made on June 11, the award to United is improper because TRANSCOM failed to follow the RFP's reopening procedures. Finally, the protester argues that the agency's evaluation of United's past performance was unreasonable because National alleges that United has no prior relevant experience with the transportation requirement being acquired under the solicitation.

The agency argues that National's protest should be dismissed because it is not an interested party to pursue the protest. National contends that it is an interested party to bring its protest. In this regard, National alleges that its direct economic interest will be adversely affected by the award of United's contract because the addition of a sixth awardee will "reduce the total volume of work solicited under task orders available for National." Protest at 2. We agree with the agency for the reasons explained below.

**\*3**  Under the bid protest provisions of the Competition in Contracting Act of 1984, 31 U.S.C. §§3551–3556, only an "interested party" may protest a federal procurement. That is, a protester must be an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of a contract or the failure to award a contract. Bid Protest Regulations, 4 C.F.R. §21.0(a)(1). Determining whether a party is interested involves consideration of a variety of factors, including the nature of issues raised, the benefit or relief sought by the protester, and the party's status in relation to the procurement. *Four Winds Servs., Inc.,* B–280714, Aug. 28, 1998, 98–2 CPD ¶57. A protester is not an interested party where it would not be in line for contract award were its protest to be sustained. *Id.*

Under the RFP's terms, IDIQ contract holders are guaranteed a minimum quantity of orders valued at no less than $2,500 and a fair opportunity to compete for future task orders issued by TRANSCOM.[6] RFP at 3–4, 87; RFP, attach. No. 3, Fair Opportunity Process, at 1. National's protest did not explain why it believes that the addition of United's contract will result in National receiving a volume of orders valued less than its minimum guarantee or why a sixth award will prevent National from competing for future task orders.[7] In this regard, the protester has not credibly alleged that its contract would be reduced, increased, or otherwise affected by the agency's decision to award a sixth contract. Furthermore, National has already received an award here, and the RFP terms expressly prohibit existing IDIQ contract holders from being eligible for additional awards. RFP at 52. Under circumstances such as these, and where the solicitation contemplates multiple awards, an existing contract awardee is not an interested party to challenge the agency's decision to award another contract.[8] *See Recon Optical, Inc.; Lockheed–Martin Corp., Fairchild Sys.,* B–272239, B–272239.2, July 17, 1996, 96–2 CPD ¶21 at 3–4 (to constitute a cognizable protest when a solicitation contemplates multiple awards, an existing contract holder must credibly allege direct economic harm in order to challenge the award of another contract).

The protest is dismissed.


Susan A. Poling
General Counsel


## Footnotes

1   The solicitation's evaluation scheme provided that offerors would be evaluated under the following four factors: business proposal, technical, past performance and price. RFP amend. 2 at 6–8. Proposals would first be evaluated for acceptability under the business proposal and technical evaluation factors. *Id.* at 6. Technically acceptable proposals would then be evaluated under the past performance and price factors to determine which offerors represented the best value. *Id.* Past performance was considered to be approximately equal to price. *Id.*

2   The solicitation established that the ordering period for any new contractor added to the awardee pool would coincide with, and could not exceed, the ordering period established for initial pool of IDIQ contract awardees. RFP at 52.

3   The solicitation required that all offerors hold their pricing firm for 180 days after the due date for receipt of proposals. RFP amend. 2 at 5. The agency's sixth award to United was made within this 180–day period.

4   National did not challenge the fifth IDIQ contract award. Protest (**B–411830.1**) at 1–7.

5   The protest was dismissed on the basis that our Office would not consider the merits of National's allegations, which in essence sought to limit the agency's discretion to increase the pool of competition among the IDIQ contract holders. *National Air Cargo Group, Inc.,* B–411830, Sept. 24, 2015 (unpublished decision) at 2. We generally will not review a protest that has the purpose or effect of reducing competition to the benefit of the protester and do not consider such an argument as stating a valid basis for protest. *Id.* (*citing Morpho Detection, Inc.,* B–410876, Mar. 3, 2015, 2015 CPD ¶85 n. 4).

6   The ordering procedures provide all multiple-award IDIQ contract holders with a fair opportunity to be considered for every order in excess of $3,000, unless the contracting officer determines that one of four limited exceptions applies. RFP, attach. No. 3, Fair Opportunity Process, at 1.

7   While the addition of a sixth awardee has the potential to increase competition among IDIQ contract holders for future task orders, it is unclear how the addition of another awardee will reduce the total volume of orders issued by the agency. Furthermore, the addition of a sixth contract awardee does not guarantee increased competition for each task order because the solicitation encourages, but does not require, IDIQ contract holders to compete for future orders. RFP, attach. No. 3, Fair Opportunity Process, at 4.

8   While our Office is not bound by decisions of the Court of Federal Claims, we note that the court has reached a similar conclusion. *See Automation Technologies, Inc. v. United States,* 73 Fed. Cl. 617 (2006) (an awardee under a multiple-award contract lacks standing to protest an award to another offeror where it has not established that it has a direct economic interest to challenge the additional award).

B- 411830.2 (Comp.Gen.), 2016 WL 1055743

**End of Document**                         © 2016 Thomson Reuters. No claim to original U.S. Government Works.

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
### (Bid Protest)

| | | |
|---|---|---|
| NATIONAL AIR CARGO, INC., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | No. 16-362C |
| | ) | (Judge Charles F. Lettow) |
| **Defendant,** | ) | |
| v. | ) | |
| | ) | |
| UNITED AIRLINES, | ) | |
| | ) | |
| **Defendant-Intervenor.** | ) | |

I, Denise Cameron, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the Contracting Officer for the six contracts resulting from solicitation HTC711-15-R-R001 for Commercial Multimodal Transportation Services (MM2).

2. I understand that under Rule 65(c) of the United States Court of Federal Claims, the Court may preliminarily enjoin the Government "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully ... enjoined." The purpose of this declaration is to assist the Court in determining the proper amount of such a bond, by quantifying the financial losses to the Government that would result from a preliminary injunction barring United States Transportation Command (USTRANSCOM) from placing task orders under the six contracts resulting from Solicitation No. HTC711-15-R-R001 (MM2) for international commercial multimodal transportation services during the pendency of the protest. As explain below, I estimate the costs to the Government of complying with a preliminary injunction of that duration would exceed $1,169,058.00.

3. On February 12, 2015, the United States Transportation Command (TRANSCOM or agency) issued Solicitation No. HTC711-15-R-R001 for international commercial transportation services to move Department of Defense and other Government-approved cargo. The solicitation provided that the agency intended to award "approximately 4" ID/IQ (Indefinite Delivery/Indefinite Quantity) contracts to provide the Government with flexibility of choice and service coverage. Each awardee was guaranteed a minimum of $2,500 in orders. The solicitation required offerors to hold firm the prices in their offers for 180 calendar days from the date specified for receipt of offers. Offers were due on March 16, 2015. On June 11, 2015, the agency awarded five MM2 ID/IQ contracts, including one to NAC. On July 17, 2015, still within the 180 days offerors were required to hold their prices firm, the agency awarded a sixth MM2 contract to United.

4. The Government's financial loss would arise from the necessity to continue to use the predecessor Commercial Multimodal Transportation services contract (MM1) that is still in place. The MM1 contract only has four awardees and NAC is the only air carrier. The current MM2 contract under protest has six awardees, including three air carriers. The injunction will result in reduced competition and increased costs for the Government. I estimate the Government will pay increased costs of $584,529.00 per month if it is required to continue to use MM1. I then assumed the current MM2 protest proceedings will take approximately two months, resulting in a total increased cost of $1,169,058.00.

5. I estimated this cost by the rate reductions for MM2 as compared to MM1. The price analysis performed for the MM2 award utilized historical NTE rates to determine proposed NTE prices fair and reasonable. Part of the analysis included application of the MM1 carrier NTEs to the two sample task orders listed in the RFP. The total cost for the two sample task orders was

calculated for each of the MM1 carriers using their respective NTE rates.  Three of the four

MM1 carriers submitted NTE rates for the MM2 contract which were lower than their rates for

the MM1 contract.  When averaged, the rate reductions equate to total costs which are 11.1%

less than those of MM1.

6. Accordingly, if the Court grants the preliminary injunctive relief requested by NAC,

USTRANSCOM respectfully requests that the Court require security under RCFC 65(c) of no less

than $1,169,058.00 to pay the USTRANSCOM's costs if USTRANSCOM is later found to have

been wrongfully enjoined.

I declare under penalty of perjury that the foregoing is true and correct.


4 April 2016
Date

DENISE CAMERON
Contracting Officer